Mr. Gonsalves. May it please the Court, Your Honor, my name is Gregory Gonsalves, and I am representing John Wleklinski in this case. We believe that the District Court made three errors in this case, one with respect to claim construction, one with respect to its non-infringement decision, which was based on an erroneous claim construction, and one in its refusal to permit John Wleklinski to correct one obvious mistake in his initial infringement pretensions. Mr. Gonsalves, let me ask you one thing on that last point. Both parties devote a significant amount of time to this issue of being interrogatory and not being allowed to correct the answer, but does it really make any difference? Because the District Court said, even if I had granted, it wouldn't have made any difference because based on my claim construction, I still would have ruled this way with respect to the cross-stitching issue, right? Certainly from this point forward, if you were to instruct the District Court judge to allow John Wleklinski to amend his infringement contentions in accordance with the contentions that the District Court judge ruled on, there would certainly be no prejudice to Targus because… But even if I did, as an alternative ground in the footnote, he says, I would still rule in favor of Targus. That is correct. So I mean, it's really, in terms of our ruling on the grant of summary judgment, do we really have to worry about this procedural issue? Because we have the judge's alternative ruling in front of us. That's correct. I don't think it makes a big difference. I'm thinking that if I think this claim construction is wrong for the reasons that I'll tell you… Let's go right to the different materials. Doesn't the claim itself support that? It talks about stretchable material in one, referring to one piece of fabric and non-stretchable with respect to the other. Doesn't that suggest that they're different, as the District Court held? It says made of separate material, in one case non-stretchable, and in the other case longitudinally stretchable. That's exactly right, Your Honor. That's what the claim says. The claim says that the center section is made of material that's longitudinally stretchable, and that the end sections are made of material which is relatively less stretchable. Well, it doesn't say that. It says relatively non-stretchable. Relatively non-stretchable. Which suggests pretty clearly that it's a different material, doesn't it? If it would please the Court, this is… And it is the material… The material on the end section consists of two plies of a strap and stitching. There's three components to the end section. Wait, are we talking about the accused product? The accused product. That's correct. That's the green that was submitted to the clerk's office? That's the green strap and the different… Right. Well, there's two representations of that. We've seen them. Yeah, they're in the brief. You've seen them. And so this is the accused product. And this is… Well, you're not going to ask us to find facts as to what's going on. Please tell us what's wrong with this claim construction. Okay. I will tell you what's wrong with the claim construction. The claim construction is wrong for multiple reasons. It incorporated multiple limitations that were not in the claims into the interpretation of the claim. For example, it incorporates the term – and this is a quote from the district court's order at page A4 – the plain language of Claim 1 requires that the end sections and the center sections be made of separate pieces of separate material. It uses the word separate material. There's no such phrase separate material in Claim 1. Well, he later uses the term different material. I think we can read his second use of separate there as synonymous with different, can't we? I disagree completely with that. And this is the reason why. Okay. That could be a moment of ambiguity. I have three other reasons why I believe that's wrong. He did not use the phrase separate material once in his order. He did not use it twice. He did not use it three times. He used it four times. So the argument that he meant something other than separate material… Well, so let's assume we think he was wrong. We accept that and we say we think it requires different and not separate material. It doesn't change anything about this case, does it? I believe it does. I believe that the material in the accused product, the end section, is composed of two plies and stitches. The center section is composed of one ply. Two plies and stitches is different than one ply. It's important because it has different properties. Non-stretchable versus longitudinally stretchable, those aren't different? Doesn't the claim require a difference there? There is a difference in the accused product. The difference is in the accused product is the center section is made of one ply, and this is undisputed, and that the end sections are made of two plies and stitching. The two plies and the stitching are less stretchable than a single ply. That's the whole idea behind the invention. It's less stretchable, it's non-stretchable, and longitudinally stretchable. Relatively non-stretchable. Isn't that an important point? Also, Mr. Gonsalves, it's talking about material. The inherent nature, which I think is what you're discussing with Judge Rader, it suggests that the material inherently has to be stretchable or non-stretchable. When I read the claim, I see first and second separate end sections, and then I see a qualifying phrase, made of a relatively non-stretchable material. Relative to what? Relative to the center section. The end section on the accused product is relatively non-stretchable compared to the center section. But it describes material, which strongly suggests to me we're talking about different fabric. It says relatively non-stretchable material, and then it talks about different material, which is longitudinally stretchable. No? I think that conclusion is wrong. I don't think that's what it's referring to. I don't think it's limited to that, and I don't think it's the most natural. I think that would be incorporating the limitation that it has to have a different chemical composition. I see something as two plies with stitching as different material than something that's just one ply. And I think it's natural from our everyday common experience that when you have something that's two ply, it's advertised to be strong in some instances. In this instance, it's relatively less stretchable. Less stretchable relative to the single ply material. Now, in addition, the stitching in the end sections is, even if, and I don't think it's correct, but even if that limitation of having a different chemical composition, which does not appear in the claim, but even if it were to be put in the claim, the stitches in the end section do have a different chemical composition than the single ply material in the center section. We're looking at the stitching part of the claim construction. The claim language requires you to unite the strap, the center, and the end pieces, three separate entities. Don't you have to go through all three to do that? The accused product does secure three different items. Does it go through all three simultaneously? Yes, it does. The end section is composed of two plies. The bottom ply is secured by the transverse stitch to the single ply of the center section, and it's also secured to the pad. Those are three things. The bottom ply of the end section, the single ply of the center section, and the pad. Three things. It does go through three things. There is infringement under a proper claim construction. Now, there are a lot of problems with the claims, and I just touched on them firstly, but there are others. You don't mean problems with the claim, you mean claim construction. With the claim construction, yes. How is it attached to the center section again? The end section is composed of two plies, a top ply and a bottom ply. The bottom ply is stitched to the single ply of the center section. In addition, the bottom ply of the end section is also stitched to the pad, so it's secured, which is the language that's used in the claim, to two things. The bottom ply of the end section is secured to the single ply center section and is secured to the pad. So it meets the limitation of the claim when that claim is construed properly. Where does the center section stop? The center section and the end section meet at the point where the transverse stitch element secures them together. I perceived in the various graphs we had a gap there. I didn't see that there was a meeting. Well, let me go back to the claim language. Assuming you don't import all of these limitations that were imported improperly. The claim language for the transverse stitch says, securing the inner ends of the end sections both to the corresponding ends of the center section and to the elongated resilient strap ends. There's no claim language in there about, there has to be some kind of boundary, and this is on one side and this is on the other, and the stitch has to be here or there, or all of that stuff. It just says, and I'll repeat, it says that the stitch secures the inner ends of the end sections to the stretchable center section. And sure enough, when you look at the strap, the bottom ply of that end section is indeed secured to the stretchable center section. Would you like to maintain some of your rebuttal time, Mr. Gonsalves? Yes, if I could just briefly talk about the claim construction for an additional minute. Sure. The separate material does not appear in the claim, yet it was part of the court's claim construction. In addition, the court based its ruling on non-infringement on separate material, because separate material, that phrase appears twice in its opinion on, literally on infringement, and once in the portion of opinion dealing with non-infringement under the document of equivalence. So that was very important. Targis, in its brief, they do not deny that the phrase separate material should not have been incorporated into the construction of the claim. Rather, they say it was a mistake. Well, I don't think that's correct, because they said it four times. I find it hard to believe the district court made a mistake four times. So the claim construction is wrong. Targis agrees that it's wrong. The court based its non-infringement decision, both literal and under the document of equivalence, on a claim construction that everybody believes is wrong, and therefore, for that reason, the claim construction should be corrected and should be remanded back to the district court. And I'll reserve the rest of it. Thank you, Mr. Gonsalves. Mr. Black? Thank you, Your Honor. May it please the court. I'm Ken Black on behalf of Targis, and I'm joined by my colleague, Matthew Thain, today. We think that from the beginning of this case, the claimant here, Mr. Wilkinski, has been trying to force a square peg into a round hole. The square peg is the accused strap, and the round hole is the 388 patent. And no matter how much one tries to whittle the square peg or to square up the round hole, they simply don't join together, and there is no claim construction that yields infringement nor infringement once one gets to a proper claim construction. The district court referred to a separate material. Is that an error? I don't think it's an error, and we didn't say it was a mistake in our papers. What we suggested was that it uses the term synonymously with different, separate in the sense that it's a different composition. And so I think when the court uses that phrase, I can understand the phrasing. I don't think it's a mistake, but I think the meaning there is different material, and I don't think it's at all an improper claim construction. In fact, I think it's absolutely called for by the first element, the auxiliary strap means element. We don't really have infringement before us, but does a doubling of one kind of material make it different? I don't think that it does, and we make that point in our brief. The analogy we use is if you take a piece of paper and you fold it over, it's still paper. And the same is true here. If you have a stretchable material, and that's what this green strap is, a stretchable material. If you fold the stretchable material over, it remains a stretchable material. But does it become relatively non-stretchable with respect to the single ply? I don't think that it does. Now, the argument that's advanced is that it becomes relatively non-stretchable when we add the stitching, when we add the so-called transverse stitch means. But that then assumes that you can have materials that are made of stretchable and non-stretchable materials and add something to it, like stitches, that results in that kind of construction. And we think the district court correctly concluded that it calls for two different kinds of materials, two fundamentally different fabrics. But if there is some sort of fabric that is stretchable in one sheet and less stretchable if you double it over, whether it's with stitching or maybe it doesn't need stitching, you just fold it over and hold it together, that could in some instances make it less stretchable, right? I suppose, just the fact of doubling it over without the stitching, I'm not sure that that would physically make it less stretchable. You'd have two layers, each stretching as you pulled them, so I think it's the stitching. But friction of the two against each other would inhibit that stretching to some degree, and so they're going to be less stretchable, as my colleague points out. Yeah, I mean, I guess it's theoretically possible that that is... At what point does less stretchable become non-stretchable relative to the single ply? Yeah, and I suppose we could go there and try and figure out what it means in terms of relativity, but if there's any doubt on this point, and really this is the point, I think, of this case, that the Phillips case counsels that you look first to the plain language of the claim, and I think we can do that here and reach the result the district court reached. But if there's any doubt about that, there's no need to resort, for example, to dictionary definitions. That was the holding, obviously, that the Phillips case sought to reverse. And if one goes to the specification here, there is nothing to be found in the specification that suggests anything other than individual pieces of material. Figures 2 and 6 that are found in the specification make that abundantly clear, that there is an overlapping, and then there is two separate pieces of material, one on top of the other. And that's precisely what... We didn't have a lot of prosecution history. This thing kind of went through quickly through the patent office. Was there prior art that required some of these limitations? There may be, and we've begun to look at that, but obviously once we got a non-infringement ruling, that was never before the court. If in the unlikely event we hope that this were remanded, obviously there's going to be invalidity questions to be dealt with. But in any event, we do think that the district court applied the Phillips case exactly as it was meant to be applied. One of the things that's interesting, if you read the brief, both the opening brief and the reply brief from Mr. Waklensky, you will find precious little reference to the specification. And that's not an accident. The reason that's the case is that there's nothing literally to be found in the specification that advances the cause of the construction that's urged by the plaintiff. And so we suggest that when the district court applied the claim language and then, to resolve any possible doubt, did look at the specification, it was doing exactly what this court would have it do in accordance with the instruction given in the Phillips case. Let me talk for a minute about the auxiliary strap means. It does, in fact, call for two separate non-stretchable end sections and then a stretchable center section. We think that the district court's construction on this particular element is exactly right for two fundamental reasons. The first is the word separate. If you look at the word separate, I think we all understand it to mean individual, distinct from something else. And so what comfort strap urges is, well, dissimilar in nature may be the way we should look at this. Well, dissimilar in nature, if we take that as the definition and you apply it to this particular element, it reads the word separate right out of the claim. And the reason for that is this. The dissimilar in nature piece of this is supplied already by the reference to stretchable and non-stretchable fabric. That's the dissimilarity in nature. If you take that as your construction, there is no need to have the word separate appearing in that first element. In fact, if you look at the language, it says this. It says it includes first and second separate end sections. And then it goes on to say also including a separate center section. And I would submit that the patentee was not making a mistake in using that word separate on two different instances in that particular element. It absolutely is calling for separate pieces of separate material. And that is clear from the specification language. One of the things that has made this case difficult is that this has been a moving target. It was interesting because in the reply brief that's submitted by Mr. Witklinski, Targus was chided for using only the dissimilar in nature definition as opposed to dissimilar in identity as it relates to the meaning of the term separate. That's right in the reply brief at page 15. If we turn to the transcript from the oral argument before the district court, one can see why we chose to focus on the dissimilar in nature. And it is because Mr. Witklinski, through his counsel, urged that that was exactly where the focus should be. I'm reading now from appendix at page 19, lines 17 through 25 of the transcript. These are the words. And this is Mr. Witklinski's counsel. And we submitted a dictionary definition for separate, which I think is clearly applicable here, which is set or kept apart or dissimilar in nature and identity. And I think that probably dissimilar in nature is the key one, because that's really what the patent claim is talking about. They're talking about the nature of the end pieces being relatively inflexible and the center section being longitudinally stretchable. That's basically our position on that. Well, those were the words urged to the district court. And now when we focus on the dissimilar in nature and point out to this court that if you accept the dissimilar in nature definition for separate, it leads to a superfluous term in separate. We're then chastised for it. And it is, I think, symptomatic of the various changes in position that we've seen throughout this case. Do you agree, though, Mr. Black, that we don't really need to get to this issue about the interrogatory? I mean, the judge had in footnote three basically, well, I'm not sure it was footnote three, but in a footnote an alternative ruling. And doesn't that really take care of this whole issue as far as we're concerned in ruling on the correctness or not of the grant of summary judgment? I have really two answers to that question. One, it matters if you reach the question about the amended interrogatory for this reason. If this court concludes that the district court did not abuse its discretion, it was proper to disallow the amendment, then the game is over. That's all that needs to happen, because Mr. McClensky concedes that given the original interrogatory response, there can be no infringement. So I do think it matters in that sense. But I'll go on to say that if the court were to conclude that the district court abused its discretion and should have allowed the amendment, then it doesn't really matter, because there can be no infringement either way. In fact, let me get to that point right now. This relates to the transverse stitch means, the second element that was, I think, properly construed by the district court. The district court required that the stitch means secure multiple pieces and that there was no securing of multiple pieces in the accused product because it only had a unitary piece of fabric. The key language in this particular element is securing, and then the word to. When you think of securing to, you're talking about fastening, you're talking about joining together. And you don't need to secure or join together that which is already joined. We have a unitary piece of fabric. In addition to that, the specification clearly supports it in this instance as well. If you go to figure six, you can see that the stitch means goes exactly through the three layers. Let me just talk about a point that was addressed by Mr. Gonsalves. If one looks at this particular strap, this is the one that the court had, the suggestion is that the three layers involved are the pad, the underlying pad, and then there's this bottom piece of the bottom ply, I believe it was called. The blue is irrelevant, though. Blue is irrelevant. It has nothing to do with what we're doing here today. The bottom ply, and then there's the top ply. The problem with the argument is that the end section is defined by the stitching. And so you can't have it both ways. Either the stitching under their proposed construction creates the end section, or, if that's true, the stitch doesn't secure the end section to the center section because the stitching is the end section. You don't need to secure that which already is. Now, if you go the other way, and you say, well, the stitching is not creating the end section, that gives them problems under the first element because, ultimately, you have the same material issue that they're dealing with on the auxiliary strap. And so it's really a bit of a Hobson's choice. I called it just that at the district court level. They have to make a choice, and either way they go, it creates a problem for them. Let me move, lastly, to the doctrine of equivalence. There is infringement before the court in the sense that the district judge did find, based on the claims construction, that there was no infringement. I think it's pretty obvious that you can find no infringement given the construction advanced. Under the doctrine of equivalence, let me just say this. It was essentially... You're actually applying the same test a second time to convert it into a legal doctrine rather than a factual one, aren't you? There's a logical inconsistency there, right? That was a lot for you to absorb quickly. And I understand that, but it's all correct. You can listen to the transcript later and piece it out. I can tell the court's given it more thought than I have. I do think this, though, that... You reapply the same test again. Is it substantially similar or function, way, and result? Whatever you use. And in one case, if the missing element is perceived to be substantially close enough, you have infringement under the doctrine of equivalence. If, in applying it a second time, you find it's not substantially close enough, then you vitiate and you don't apply the doctrine of equivalence. You preclude it. The only thing that really changes in the dual application of the test is we've made it into a legal doctrine that we can handle under summary judgment. That's what vitiation does. And the test itself is, again, a kind of a little hocus-pocus, but it does accomplish the objective. And I can see the court's point that there may be some fundamental... It would be a problem not with vitiation as applied to this case. Oh, the vitiations are law. It's just the interesting application of it is that it's the same test reapplied. But they didn't allege, did they, at this stage in the proceeding, they didn't allege with any specificity the function, way, result, how it performs in the same function or result, right? Well, there are at least contentions about why the accused product infringes, if I'm understanding the question correctly. And the court went on to find, based on its construction, that there was no infringement given the allegations. I'm not talking about literal. I'm talking about DOA. Oh, yes, exactly. If we're talking about doctrine of equivalence, I think there was literally nothing advanced in terms of evidence and linking. And so my point simply here is... That might be the better way to go. Then you don't have to worry about performing the test twice, right? That's right. Which is always true vitiation. There's always a better way to go. I'll take that counsel. With that, Your Honor, we'll submit... I'm obviously not talking just to you. We urge the court to affirm the district court's ruling. Thank you. Mr. Gonsalves. Yes, Your Honor. I want to clear up a few misconceptions. Number one, I'll start with claim construction. There were three limitations that were incorporated into the construction of Claim 1 that should not have been. One we already talked about, separate material. There were also others overlapping relation. And there was another one, separate short piece. Both of these were mentioned in the district court's order in the claim construction. But isn't Mr. Black right on the stitching that the stitch itself defines the end piece and therefore you have a difficult choice to make as to where you decide, what you decide to call the end piece? Okay. If this court takes out these limitations that were erroneously incorporated into the construction of Claim 1, then I will have no problem establishing infringement. And I have no problem with the specific issue that you just raised. There's a transverse stitch, according to the claim, and in accordance with the product, is at the inner ends of the end section. It's not all the stitching on the end section. It's just that part of the stitch which secures the bottom ply of the end section to the single ply of the center section. And that's in the claim, it says the inner end of the end section. So if you look at the product, this is the center section. You can tell because it's easily stretchable. This is the end section, and no one can stretch this. It's extremely, relatively unstretchable. Now, this is the stitch at the inner end of the end section. That's the transverse stitch. All of this other stitching here is part of the end section. So I don't have any problem at all with the question that you just posed. I have plenty of stuff in here to match up with the elements that are in the claim. I have five seconds left. The claim construction is wrong. They incorporated these elements. The overlapping relation and separate short piece, they are in Claim 5. If claims use different language, there's a presumption that they cover different scope. These three things, overlapping relation, separate short piece, as well as separate material... Claim 5 is an independent claim, and therefore claim differentiation doesn't work very well, right? I wouldn't say that it doesn't work very well. We've said that in Phillips. We point out that it works for dependent claims, but when you get into independent claims, you could be describing the same invention in different terms. Well, but I think there's a presumption that regardless if it's a dependent claim or if it's an independent claim, if claims use different language, then the patentee intended for them to be different things. And we explained that in Phillips and said it works with dependent claims, but not so well with independent claims. Now, the other point in closing, it still applies, but I agree with you, not as strongly, but it still applies. Clearly, if he wanted to limit it to separate material, overlapping relation, separate short piece, he would have put those terms in the claim. He clearly knew how to do so. He chose not to do so. Thank you very much, Mr. Gonsalves.